UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARIA AIDE DELGADO**<br>    **FED. REG #68452-179**<br>**VS.** | **CIVIL ACTION NO. 6:12-cv-0347**<br><br>**SECTION P**<br><br>**JUDGE HAIK** |
| **UNITED STATES MARSHAL** | **MAGISTRATE JUDGE HILL** |

<u>REPORT AND RECOMMENDATION</u>

*Pro se* plaintiff Maria Aide Delgado, proceeding *in forma pauperis*, filed the instant civil action on February 3, 2012.  Delgado is a federal prisoner[1] in the custody of the Bureau of Prisons ("BOP"), currently housed at the Federal Correctional Institution located in Aliceville, Alabama.  Delgado complains that she and her mother, Sabina Luna Valdez, were "remanded" to the custody of the United States Marshal for the February 6, 2012 trial of her brother, Antonio Luna Valdez, Jr., and thereafter returned to BOP custody on or about March 2, 2012. [*See*  rec. docs. 1, 4 and 9].  While Delgado was in the Marshal's custody, she was housed at the Iberia Parish Jail ("IPJ") in New Iberia, Louisiana.

In her original handwritten pleading, filed while she was still housed at the IPJ, Delgado complained about the conditions of confinement at IPJ.  More specifically, she

---

[1] Plaintiff was convicted of conspiracy to possess with intent to distribute cocaine, cocaine base, and marijuana for which she was sentenced to serve 240 months imprisonment in the custody of the Federal Bureau of Prisons. *See United States v. Maria Aide Delgado*, No. 6:06-cr-60074, rec. doc. 755.

alleged that the IPJ is unsanitary[2], that she received inadequate medical care for "ovary pain"[3] and that she and her mother, Sabina Luna Valdez (who were housed together at FMC Carswell) where not placed in the same cell.

She alleged that the United States Marshal for the Western District of Louisiana was responsible for either negligently failing to correct the unwholesome conditions of the IPJ, or for negligently transferring her and her mother to the IPJ in the first instance. [rec. doc. 1]. Accordingly, she sought injunctive relief – an Order of this Court requiring the Marshal to correct the complained of conditions and circumstances she encountered at the IPJ and ordering the Marshal to house Delgado and her mother, Sabina Luna Valdez, in the same cell in the C-pod of the IPJ[4], or, alternatively, ordering that both be transferred to the Acadia Parish Jail to be housed in the "isolation room", where she and her mother had apparently been housed prior to their convictions.

---

[2]Delgado complained that the spoon she was provided was "bitten", the mattresses are "thin and worn-out, the sheets are thin, see through, torn and very dingy", that there is no privacy in her pod, that her bra was taken from her and she wanted her bra given back to her, that she was not provided pads for urinary discharge so she used toilet paper, and that she was not given "shower shoes".
    Delgado also alleged that her mother's bed sheets were "dingy old, spotted" her towel was too small to bathe with, her washcloth was "dingy" and "torn-up", and that her mother's pod was small, insufficiently lit and did not appear to have a television or telephone. These claims regarding the conditions of confinement faced by Delgado's mother are not before the Court. *See* rec. doc. 25.

[3]Delgado complains that she was not given an ultrasound and that because her ovary pain was after the 4:00 p.m. shift she could not get her anti-inflammatory pill until the next day.

[4]Delgado complained that the pod in which she was housed (D-pod) was "dirty, crowded and unhealthy"and "noisy" and, accordingly, requested that they be placed in C-pod which is "one of their better & less un-sanitized pods."

Delgado was ordered to file her Complaint utilizing this Court's form for filing prisoner civil rights complaints. [rec. doc. 3].  Accordingly, on February 27, 2012, while still detained at IPJ,  Delgado submitted an Amended Complaint on the proper form.  She once again named the Marshal as the sole defendant and she again complained of conditions of confinement and inadequate medical care at the IPJ.[5]  Plaintiff prayed for injunctive relief only – an Order of this Court directing the Marshal to correct the complained of conditions and circumstances she encountered at the IPJ and ordering the Marshal to house Delgado and her mother, Sabina Luna Valdez, in the same cell. [rec. doc. 4].

On July 20, 2012, Delgado filed a Motion to Amend and Supplement her Complaint. By this Motion, Delgado asked that her mother, Sabina Luna Valdez (Fed. Reg. No. 46413-179) be joined as an additional plaintiff.  She also requested that the following persons be named as additional defendants:  (1) Two male federal employees,

---

[5] Delgado re-stated her initial complaints, adding that the booking room was small, and that during booking, she received a sandwich with no drink and was not permitted to go to the bathroom until after several requests.  Delgado also complained that she should have been provided a two piece uniform because her one-piece jumper was not "appropriate" for a female prisoner, that she was provided with only one roll of toilet paper per week, that it took eight days to get a jail number so that she could place telephone calls and purchase additional soap and toilet paper, that the showers had mold and the curtains were "old and torn", the cleaning cart was available only 3 to 4 times per week and the trash cans were emptied only once per day, that it was cold in her cell and she was not provided an extra blanket, that her meals were cold, that for the first 14 days of her stay, the guards did not enforce the "10:30 p.m. lockdown time" so it was noisy at night, that she was not allowed hair conditioner and was not provided a free comb or hair brush.  Delgado complains that she did not see a doctor for her ovary pain until ten days after she was transferred to the IPJ, but that the pain was "not so bad because of the Tylenol" that she was taking, and that sometimes pills were missed or given at different times.  Delgado also complains that she was not permitted sufficient time in the law library and that it does not comply with "F.B.O.P., or Dept. of Corrections, rules or regulations."

one employed by the BOP's Oklahoma Transfer Center and the other employed by the Marshal Service who were present at the airport in Fort Worth, Texas on January 31, 2012 when plaintiff and her mother were transported to Louisiana; (2) Department of Corrections employees who inspected the IPJ on February 14, 2012; (3) The Sheriff of Iberia Parish (Sheriff Ackel); (4) The Warden of the IPJ (Warden Hayes); and (5) The Warden's brother, a Captain employed at the IPJ (Captain Hayes). Plaintiff expressed her desire to exclude "U.S. Marshal Corey" from the Complaint. She additionally withdrew her original request for injunctive relief and, instead, requested compensatory damages from each of the defendants. [rec. doc. 22].

On October 19, 2012, the Court denied Delgado's request to add Sabina Luna Valdez as an additional plaintiff and denied Delgado's request to name the two male federal employees, one employed by the BOP's Oklahoma Transfer Center and the other employed by the Marshal Service who were present at the airport in Fort Worth, Texas on January 31, 2012 when plaintiff and her mother were transported to Louisiana. Delgado was permitted to name the unidentified Department of Corrections employees who inspected the IPJ on February 14, 2012, the Sheriff of Iberia Parish, the Warden of the IPJ and the Warden's brother, a Captain employed at the IPJ as defendants. [rec. doc. 25].

Although the Court advised Delgado that she could not proceed against unknown John Doe defendants, because Delgado provided sufficient factual detail of the nature of the claims which she wished to pursue against each of these defendants, the Court

4

subsequently decided to conduct an initial review on the allegations as alleged, instead of requiring Delgado to properly identify each proposed defendant by name. [rec. doc. 47].

Delgado's Motion for Stay seeking a 12 month stay so that she could exhaust administrative remedies required by the Federal Tort Claims Act ("FTCA") with respect to her negligence claims against the United States Marshal was denied. [rec. doc. 25]. Thereafter, Delgado's claims against the United States Marshal were dismissed for lack of subject matter jurisdiction on grounds that the plaintiff failed to properly exhaust administrative remedies prior to filing suit.[6] [rec. docs. 24 and 33].

Delgado's request to file a Third Amended Complaint, styled as a class action lawsuit, was denied because she had already filed an original, first standardized and second amended complaint, because she is not a lawyer authorized to file pleadings on behalf of others, because any additional claims not previously presented were prescribed and because Delgado was clearly engaging in "recreational litigation", the abuse that Congress sought to deter in enacting the PLRA. [rec. doc. 49].

---

[6]The Court noted that the only proper defendant in an FTCA claim is the United States of America, not the federal agency or its employee. *Galvin v. OSHA*, 860 F.2d 181, 183 (5th Cir.1988); §1346(b), §2674 and §2679(b)(1); *See also* 28 U.S.C. §2679(d)(2) ("Upon certification...that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim . . . shall be deemed to be an action or proceeding brought against the United States...and the United States shall be substituted as the party defendant."). Accordingly, Delgado was advised that the United States of America was the proper party defendant, not the United States Marshall or the United States Marshal's Service. *See* rec. doc. 24.

Since the initiation of this lawsuit, Delgado has filed numerous frivolous Motions and amendments to her pleadings.[7] Indeed, what began as an action against the United States Marshal (which insofar as the action arose under the FTCA was dismissed[8]), has now primarily been converted into a civil rights action against officials of the Iberia Parish Jail (Sheriff Ackel, Warden Hayes and Captain Hayes) in which Ms. Delgado complains about the conditions of her brief confinement at the facility beginning February 1, 2012 and ending March 2, 2012. These remaining claims are addressed herein.

## LAW AND ANALYSIS

### I. Screening

When a prisoner files suit in *forma pauperis* pursuant to 42 U.S.C. § 1983, the court is obligated to evaluate the complaint and dismiss it without service of process, if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. *Gonzalez v. Wyatt*, 157 F.3d 1016, 1019 (5th Cir. 1998) *citing Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997). A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief. *Jones v. Bock*, 549

---

[7]*See e.g.* rec. docs. 13, 14, 20, 22, 23, 34, 37, 38, 40, 41, 43, 44, 45, 46 and 48.

[8]*See* rec. doc. 33.

U.S. 199, 215 (2007); *See also Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). To withstand dismissal, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Green v. Revel*, 2011 WL 165453, *1 (5th Cir. 2011) *citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Emerson v. Thaler,* 544 Fed. Appx. 325, 327 (5th Cir. 2013) *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In her Complaint and Amended Complaints, Delgado has set forth specific facts which she claims entitles her to damages; she has pleaded her best case. The facts alleged by Delgado have been accepted as true for the purposes of this Report. Nevertheless, Delgado's claims are subject to dismissal for the reasons which follow.

**II. Conditions of Confinement Claim**

Complaints about prison conditions are analyzed under the Eighth Amendment which proscribes cruel and unusual punishment. While the Eighth Amendment does not prohibit punishment it does prohibit cruel and unusual punishment including the unnecessary and wanton infliction of pain. *See Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Additionally, while the Eighth Amendment does not mandate comfortable prisons, it does not permit inhumane ones. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999).

Federal courts employ a two-part test to determine whether a prisoner has established an Eighth Amendment violation. *Harper,* 174 F.3d at 719. First, there is an

objective requirement that the plaintiff demonstrate conditions "so serious as to deprive prisoners of the minimal measure of life's necessities," as when the prisoner is denied "some basic human need." *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995); *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Second, under a subjective standard, it must be shown that the responsible prison officials acted with deliberate indifference to the prisoner's conditions of confinement. *Id.* "The second requirement follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Farmer*, 511 U.S. at 834 (internal quotation marks and citations omitted) (emphasis added).

For conditions of confinement to rise to the level of an Eighth Amendment violation, they must be "cruel and unusual" under contemporary standards. *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. *Id.* However, when the restrictions of confinement rise to a level that results in physical torture, it can result in pain without penological purpose constituting cruel and unusual punishment under the Eighth Amendment. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998) *citing Rhodes, supra*.

Plaintiff's complaint simply does not rise to the level of an Eighth Amendment violation. Delgado may have been inconvenienced by the short comings of the IPJ; however, this inconvenience does not amount to cruel and unusual punishment.

8

To rise to the level of a constitutional violation, the conditions must be " 'so serious as to deprive [plaintiff] of the minimal measure of life's necessities . . . '" *Alexander v. Tippah County*, 351 F.3d 626, 630 (5th Cir.2003) *quoting Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995). Thus, in order to prevail on such a claim, the plaintiff must demonstrate not only that she was exposed to a substantial risk of serious harm, but that she actually suffered some harm that was more than *de minimis*. *Alexander v. Tippah County, Miss*, 351 F.3d at 630-31; *Siglar v. Hightower*, 112 F.3 191, 193-94 (5th Cir.1997); *Luong v. Halt*, 979 F.Supp. 481, 486 (N.D.Tex.1997); *Gomez v. Chandler*, 163 F.3d 921 (5th Cir. 1999); *Jackson v. Culbertson,* 984 F.2d 699 (5th Cir. 1993); *Jones v. Greninger,* 188 F.3d 322, 326 (5th Cir. 2000). *See also Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). Plaintiff has alleged no specific physical injury to her as a result of the alleged shortcomings of the IPJ.

Furthermore, even if plaintiff were able to demonstrate some physical harm beyond *de minimis* inconvenience, her claims would still be subject to dismissal because she has not shown that any of the named defendants were deliberately indifferent to her plight. She has not demonstrated that the named defendants purposefully deprived her of her rights under the Eighth Amendment.

Finally, the Supreme Court has noted that "the length of confinement cannot be ignored" when evaluating a conditions of confinement claim. *Davis*, 157 F.3d at 1006 *citing Hutto v. Finney*, 437 U.S. 678, 686-87, 98 S.Ct. 2565, 2571 (1978). Thus, the Fifth Circuit and other circuits have rejected such claims when the length of confinement

9

is of short duration. *Davis,* 157 F.3d at 1006 *citing Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996), *Shakka v. Smith*, 71 F.3d 162, 167-68 (4th Cir. 1995), and *Whitnack v. Douglas County*, 16 F.3d 954, 958 (8th Cir. 1994); *Hamilton v. Lyons*, 74 F.3d 99, 106-107 (5th Cir. 1996) *citing Mann*, 796 F.2d at 85-86 and *Cruz v. Hauck*, 515 F.2d 322, 333 (5th Cir. 1975). In the case at hand, plaintiff complains that she was subjected to harsh conditions for approximately a one month period. Clearly, such a brief period under the circumstances does not objectively demonstrate a sufficiently extreme deprivation of any minimal civilized measure of life's necessities.

In sum, although the conditions of plaintiff's confinement may have been uncomfortable and even harsh, the conditions did not violate the Eighth Amendment's prohibition against cruel and unusual punishment. *See Rhodes*, 452 U.S. at 347. Accordingly, plaintiff has failed to set forth a claim upon which relief may be granted as she has not demonstrated a sufficiently serious deprivation.

**III. Medical Care**

Delgado also complains that she was denied appropriate medical care during her short stay at the IPJ. The constitutional right of a convicted prisoner to prompt and adequate medical care is also based upon the Eighth Amendment's prohibition of cruel and unusual punishment. As in the conditions of confinement claim, in order to establish an actionable violation of the Eighth Amendment, the prisoner plaintiff must allege facts tending to establish that the named defendants were deliberately indifferent to her serious

medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Deliberate indifference is an extremely high standard to meet, it  encompasses only the unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999).

Delgado's allegations suggest that she disagreed with the course of action taken by the health care professionals at the IPJ.  However, mere disagreement with medical diagnosis or treatment does not state a claim under the Eighth Amendment. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997); *Young v. Gray*, 560 F.2d 201, 201 (5th Cir.1977) ( an "allegation that the doctor should have undertaken additional diagnostic measures does not state an eighth amendment claim").  Moreover, a complaint alleging negligence in diagnosis or treatment does not state a constitutional claim.  *See Stewart*, 174 F.3d at 534;  *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

To the extent that Delgado complains that her "ovary pain" was not promptly or definitively diagnosed or that on occasion her medications were not timely given, a delay in medical care can only amount to an Eighth Amendment violation if there has been deliberate indifference, resulting in substantial harm. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) *citing  Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).  Here, plaintiff has failed to demonstrate that she suffered any harm, much less any substantial

harm, as a result of any delayed diagnosis, care or treatment. Additionally, there is no evidence of deliberate indifference by any named defendant in this action.

Although Delgado apparently wanted an ultrasound to be performed, while desirable, such an examination is in no way constitutionally required. The fact that the medical care given is not the best that money can buy does not amount to deliberate indifference. *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The Constitution does not command that prison inmates be given the kind of medical attention that judges would wish to have for themselves; it prohibits only deliberate indifference to serious medical needs. *Mayweather*, 958 F.2d at 91; *Benjamin v. Neustrom,* 2010 WL 582735, *5 (W.D. La. 2010) *citing Ruiz v.  Estelle*, 679 F.2d 1115, 1149 (5th Cir. 1982), *amended in part and vacated in part on other grounds*, 688 F.2d 266, 267 (5th Cir. 1982).

Finally, even if any named defendants erred, such error, if any, cannot be considered the basis for an Eighth Amendment claim.  At best, such error shows merely that the prison personnel may have acted negligently with regard to plaintiff's medical condition.  However, actions which are "merely inept, erroneous, ineffective, or negligent" do not satisfy the high standard of deliberate indifference. *Doe v.  Dallas Independent School District*, 153 F.3d 211, 219 (5th Cir.  1998).

Moreover, negligence, and even medical malpractice, do not implicate the Eighth Amendment and do not provide a basis for a § 1983 claim. *Estelle*, 429 U.S. at 106; *Stewart,* 174 F.3d at 534; *Gobert v. Caldwell,* 463 F.3d 339, 346 (5th Cir. 2006);

*Varnado*, 920 F.2d at 321. Even "gross negligence" does not establish deliberate indifference. *Hernandez v. Tex. Dep't of Prot. and Reg. Servs.*, 380 F.3d 872, 882 (5th Cir. 2004).

For these reasons, plaintiff has failed to state a viable constitutional medical care claim and dismissal on that basis is recommended.

**IV. Access to Courts**

Plaintiff also appears to imply that her right of access to the Courts was impaired or denied. "It has long been recognized that prisoners generally enjoy the constitutional right of access to the court." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999); *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). The right of access to the court is not unlimited, however, and includes "only a reasonable opportunity to file non-frivolous legal claims challenging [the prisoners'] convictions or conditions of confinement." *Id. citing Lewis*, 518 U.S. at 351.

Stated differently, "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir. 1996) *citing Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993); *Norton*, 122 F.3d at 290; *Lewis*, 518 U.S. at 351, 116 S.Ct. at 2179-81.

Before an inmate can prevail on a claim that her constitutional right of access to the courts was violated, she must demonstrate that she suffered "actual injury", that is, that the denial of access "hindered h[er] efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351; *McDonald v. Steward,* 132 F.3d 225, 231 (5th Cir. 1998). Stated differently, a plaintiff must "demonstrate[ ] that [her] position as a litigant was prejudiced by [her] denial of access to the court." *McDonald,* 132 F.3d at 231 *citing Eason*, 73 F.3d at 1328 and *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir. 1993). Thus, a civil rights claim cannot be based on "minor and short-lived impediments to access" in the absence of actual prejudice. *Chandler v. Baird*, 926 F.2d 1057, 1063 (5th Cir. 1991). An "actual injury" must be shown. *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999); *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998).

Delgado has not shown how her ability to prepare and transmit legal documents was curtailed, or that her position as a litigant was in any way prejudiced, during her brief stay at IPJ or thereafter. To the contrary, the numerous motions and amendments filed by plaintiff in this action belie any such claim. Plaintiff was obviously able, and in fact filed, numerous legal documents in this Court both during and after her stay at the IPJ. That is all that is required by the Constitution.

For this reason, Delgado has failed to state an access to courts claim.

## V.  IPJ Inspection

Finally, Delgado asserts a claim against unidentified Department of Corrections (DOC) employees who inspected the IPJ on February 14, 2012.  More specifically, Delgado asserts that these individuals were negligent in their duties when they performed the annual inspection of the facility allegedly required by DOC regulations, thereby allowing the IPJ to continue functioning.

In order to state a claim under § 1983, the plaintiff must demonstrate that she has been deprived of a right secured by the Constitution and laws of the United States and that the defendants deprived her of this right while acting under color of state law.  *Sw. Bell Tel., LP v. City of Houston,* 529 F.3d 257, 260 (5th Cir. 2008);  *Leffall v. Dallas Indep. Sch. Dist*., 28 F.3d 521, 525 (5th Cir. 1994).

A claim of negligence or even gross negligence does not implicate the Constitution and does not provide a basis for a §1983 claim.  *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (holding that Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety.").  *Daniels v. Williams*, 474 U.S. 327 (1986) (holding that injuries sustained by a prisoner due to the negligent conduct of a correctional officer did not constitute a deprivation of a Fourteenth Amendment right); *Davidson v.  Cannon*, 474 U.S. 344, 348 (1986) (clarifying that *Daniels* applies to substantive as well as procedural due process articulating that "the protections of the due process clause, whether procedural or substantive, are just not

triggered by lack of due care by prison officials."); *County of Sacramento v. Lewis*, 523 U.S. 833, 849, 118 S.Ct. 1708 (1998) ("[T]he Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold" of constitutional protections); *Paul v. Davis*, 424 U.S. 693, 701 (1976); *Bowie v. Procunier*, 808 F.2d 1142, 1143 (5th Cir. 1987) (holding that neither the Due Process Clause, Equal Protection Clause, nor the Eighth Amendment prohibition against cruel and unusual punishment are implicated by a prison official's negligent conduct); *Ratcliff v. Rainwater*, 93 Fed. Appx. 623, 625 (5th Cir. 2004) (noting that "section 1983 liability does not extend to conduct that is merely negligent."). *See also Franco–Calzada v. United States*, 375 Fed. Appx. 217, 220 (3d Cir. 2010) (holding that officials' failure to inspect and rectify faulty ladder attached to his bunk bed, which caused his fall and injury, was negligence that does not rise to a constitutional violation of the Eighth Amendment or Due Process Clause); *Benson v. Cady*, 761 F.2d 335, 339-340 (7th Cir.1985) (allegations that prison officials failed to inspect and maintain cell beds and exercise equipment which fell and allegedly injured inmate in two separate incidents, at most, constituted claims that prison officials did not exercise due care but failed to demonstrate deliberate indifference to an unreasonable risk of harm posed by an inmate's physical environment).

    The basis for this fundamental rule is that the constitutional amendments are not "font[s] of tort law to be superimposed upon whatever systems may already be

administered by the States." *Lewis v. Woods*, 848 F.2d 649, 651-52 (5th Cir. 1988) *citing Paul*, 424 U.S. at 701. Accordingly, the Supreme Court has repeatedly rejected "any attempt to derive from congressional civil rights statutes a body of general federal tort law." *Id.* If that were not so, the Court has reasoned that any party who is involved in nothing more than negligence involving a state official could allege a constitutional violation under §1983. *See Albright v. Oliver,* 510 U.S. 266, 284 (1994) *quoting Parratt,* 451 U.S. at 544. That is clearly not the intent of the law. Thus, complaints of negligence on the part of state or local officials do not set out a valid claim under the Civil Rights Act even if such complaints would be valid under state law.

In accordance with this reasoning, the Fifth Circuit has opined that alleged negligence in the inspection of a prison facility does not set forth a Constitutional claim for imposition of § 1983 liability. *Ortega v. Rowe*, 796 F.2d 765, 768-769 (5th Cir. 1986); *see also Lopez v. U.S. Immigration and Customs Enforcement*, 455 Fed. Appx. 427, 434 (5th Cir. 2011). In *Ortega*, the Fifth Circuit found that jail officials were unreasonable and negligent in their failure to regularly inspect jails. *Id*. Even so, the officials were not liable under § 1983 because the record showed no evidence of officials' desire to punish the prisoners. *Id.* The same reasoning applies to the present case. Even if the defendants were grossly negligent in their inspection of the IPJ, that negligence does not translate into punitive intent. Therefore, Delgado has not established a § 1983 claim, and the claim

17

should be dismissed for failure to state a claim for which relief may be granted.[9]

Finally, even if Delgado had stated a Constitutional claim, the Supreme Court has held that the States, arms of the States and state officials acting in their official capacities, are not "persons" within the meaning of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983"). Clearly the DOC is an arm of the State and the inspectors were inspecting the IPJ in their official capacity as employees of the DOC. Accordingly, any claim against the unidentified DOC employees in their official capacities must fail.

For the reasons set forth above;

**IT IS RECOMMENDED** that plaintiff's civil rights action be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this

---

[9] While it does not appear that Delgado has any remaining claim against the United States Marshall, to the extent that any of her allegations may be construed as asserting a *Bivens* action, that claim would likewise be subject to dismissal for failure to state a claim upon which relief may be granted under the reasoning of *Ortega v. Rowe*, 796 F.2d 765 (5th Cir. 1986) and *Lopez v. U.S. Immigration and Customs Enforcement*, 455 Fed. Appx. 427, 434 (5th Cir. 2011). The facts of this case demonstrate, at best, a claim of negligence against federal officials. There is simply no facts or evidence which could support the deliberate indifference standard required for Eighth Amendment liability. Simply stated, there is no plausible basis for a constitutional violation by the United States Marshal or the United States Marshal Service. *See Ortega,* 796 F.2d at 768; *Lopez,* 455 Fed. Appx. at *5.

report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglas v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

THUS DONE AND SIGNED in Chambers at Lafayette, Louisiana, this 9th day of August, 2014.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

Copy sent: RTH
On: 8/11/2014
By: MBD